IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:13-CV-364-FL

| | |
|---|---|
| LORI D. FAUST, | ) |
|     Plaintiff/Claimant, | ) |
| v. | ) **MEMORANDUM AND RECOMMENDATION** |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) |
|     Defendant. | ) |

This matter is before the court on the parties' cross motions for judgment on the pleadings [DE-21, DE-23] pursuant to Fed. R. Civ. P. 12(c). Claimant Lori Faust ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of her applications for a period of disability and Disability Insurance Benefits ("DIB"). The time for filing responsive briefs has expired and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, this court recommends granting Claimant's Motion for Judgment on the Pleadings, denying Defendant's Motion for Judgment on the Pleadings and remanding the case to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

## I. STATEMENT OF THE CASE

Claimant protectively filed an application for a period of disability and DIB, alleging disability beginning July 12, 2009. (R. 143). Her claim was denied initially and upon reconsideration. (R. 87-90, 96-99). A hearing before the Administrative Law Judge ("ALJ") was held on August 18, 2011, at which Claimant was represented by counsel and a vocational expert

("VE") appeared and testified. (R. 28-81). On November 4, 2011, the ALJ issued a decision denying Claimant's request for benefits. (R. 15-22). On March 29, 2013, the Appeals Council denied Claimant's request for review. (R. 1-5). Claimant then filed a complaint in this court seeking review of the now final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. § 404.1520 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 474 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. § 404.1520a(b)-(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* § 404.1520a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* § 404.1520a(e)(3).

In this case, Claimant alleges the following errors by the ALJ: (1) improper evaluation of the treating physician opinions; and (2) improper assessment of Claimant's credibility. Pl.'s Mem. Supp. Pl.'s Mot. J. Pleadings ("Pl.'s Mem.") [DE-22] at 10-13.

3

## IV. FACTUAL HISTORY

### A. ALJ's Findings

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant was no longer engaged in substantial gainful employment. (R. 17). Next, the ALJ determined Claimant had the following severe impairments: degenerative disc disease of the cervical and lumbar spine, bursitis, bilateral knee pain, and fibromyalgia. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 19). Applying the technique prescribed by the regulations, the ALJ found that Claimant's mental impairments have resulted in mild limitation in her activities of daily living, social functioning and concentration, persistence and pace with no episodes of decompensation. *Id.*

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to

> perform light work as defined in 20 CFR 404.1567(h) except she can stand and/or walk a total of six hours in an eight-hour workday. She can sit a total of six hours in an eight-hour workday. She can lift/carry no more than 20 pounds occasionally and 10 pounds frequently. She can climb stairs and ramps occasionally. She can balance, stoop, kneel, crouch and crawl occasionally. She should avoid concentrated exposure to moving or dangerous machinery and unprotected heights. She can reach overhead occasionally with the bilateral arms. She must use a handheld assistive device for standing at all times and use the contra-lateral upper extremity to lift and carry up to the exertional limits set forth above.

(R. 20).[1] In making this assessment, the ALJ found Claimant's statements about her limitations not

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.

4

fully credible. (R. 20-21). At step four, the ALJ concluded Claimant had the RFC to perform the requirements of her past relevant work and found Claimant not disabled. (R. 21-22).

**B.      Claimant's Testimony at the Administrative Hearing**

At the time of Claimant's administrative hearing, Claimant was 48 years old and unemployed. (R. 32-33). Claimant obtained her masters in business administration in 2000. (R. 33). Claimant was last employed by the federal government as a management analyst through 2009, where Claimant primarily performed her work duties at a desk. (R. 41-43). Claimant's past work experience also includes service in the army from 1981 to 2001, having obtained the rank of master sergeant upon her discharge in 2001. (R. 34-35). Claimant receives a pension from the military and federal government and has received a disability ranking of 50 percent from Veteran Affairs ("VA"). *Id.*

Claimant explained numerous medical conditions supporting her disability claim and her inability to work full-time. These medical conditions include fibromyalgia, joint pain in the hips, shoulders, and knees, back and neck pain, migraines, and depression. Claimant testified she started experiencing chronic pain in numerous parts of her body beginning in 2005. (R. 40). Claimant's pain also includes migraines which cause her to vomit. (R. 44). Claimant testified that she is treated by Dr. Eaton for her fibromyalgia and back, neck and hip problems. (R. 36). While working in 2007 and 2008, Claimant missed numerous hours of work due to medical appointments and not feeling well from chronic pain and migraines. (R. 44). Claimant frequently took two breaks of 45 minutes

---

Cont . . . .To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. § 404.1567(b).

5

Case 5:13-cv-00364-FL Document 27 Filed 06/13/14 Page 5 of 15

or more during the workday to lay down in the bathroom and often left before the end of the workday. (R. 45). Claimant's fibromyalgia makes her tender all over her body and she hurts when a person even touches her arm. (R. 59). Her pain is constant and intensified if she does not sleep well. (R. 60). Claimant testified she has constant pain in her back where some bulging discs have been identified. (R. 55). Over the years, Claimant has received an epidural, root sleeve injections, patches, physical therapy and a Tens Unit to help control her back pain, but surgery has not been recommended. *Id.* Claimant's back pain radiates into her left leg periodically. *Id.* Claimant testified she has constant pain in her shoulders which increases in severity with twisting, pulling, and pressing. (R. 46). Claimant's shoulder hurts when someone "taps" her shoulder and she can only lift objects weighing approximately five pounds as high as her waist. *Id.* Claimant can lift her arms to shoulder level, but not over her head. (R. 47). Claimant underwent surgery on both shoulders which helped alleviate her pain, along with the medication. (R. 46-47). Claimant's pain medications help lower her shoulder pain to a six or seven rating, but the medications make her tired and sometimes dizzy and nauseous. (R. 48). In addition to pain medication, Claimant periodically receives injections for her shoulder pain. (R. 51). Claimant testified she has tried shoulder injections, physical therapy, and a Tens Unit, none of which have provided lasting relief. (R. 47-48).

Claimant also experiences neck pain that has worsened in recent years and left arm and hand pain. (R. 49). Claimant can turn her neck side to side, but cannot turn around to look behind her. *Id.* Claimant's left arm is weak and she has difficultly grabbing objects in her left hand. *Id.* Claimant has dropped items from her left hand so she tries to use her right hand predominantly. (R. 49-50). Claimant has received nerve blocks for her neck and arm. (R. 51). Claimant does not have pain in her right arm and hand. (R. 49).

In addition, Claimant experiences hip pain which has persisted for approximately four years. (R. 54). Currently, Claimant treats her hip pain with Lidoderm patches and steroid injections every three to four months. *Id.* Claimant testified the injections provide her with a little relief. *Id.* Claimant uses a cane when she is standing and walking outside her home and has done so since 2006. (R. 52-53). Claimant testified the cane is for balance and support, particularly in her knees, and estimates she could walk for ten minutes with the cane and five minutes without the cane. (R. 56-57). For a four month period, Claimant testified that she made use of a wheelchair and at times a walker. (R. 53). Claimant attributes her ability to tolerate walking with a cane to her twice daily dosage of Oxycontin. *Id.* Claimant underwent two surgeries on her knees in 2007, but continues to have constant pain in her left knee and pain in the right knee when standing. (R. 56, 64). Claimant testified she does not like to stand for more than three minutes because it is really uncomfortable and can sit for approximately 30 minutes. (R. 57-58). Her left knee often buckles while standing. (R. 64).

Claimant's migraines have been ongoing and date back to her military service. (R. 60). Claimant testified the migraines begin quickly and she carries migraine medication with her at all times. *Id.* Claimant takes migraine preventative medication everyday and takes additional medication when she is experiencing a migraine, including medication for the treatment of nausea. (R. 65). Claimant has two migraines per week, with more severe migraines lasting two to three days on average. (R. 65-66). Claimant is bedridden, does not drink or eat, and cannot be exposed to light or sound when she has a headache. (R. 64-65). Claimant also experiences depression for which she is prescribed medication. (R. 59). She also suffers from urinary system problems and experiences pelvic and foot pain. (R. 61).

For activities, Claimant likes to take photographs and tend to her garden which consists of table-height gardening beds which she can access from a seated position. (R. 38-39, 58). Claimant does not weed her garden, but will plant seeds by dropping them in the soil. (R. 38). Claimant takes outside photographs of flowers and dogs and develops the photos on her computer. *Id.* Claimant estimates that she takes photographs twice per month and will also scrap-book for entertainment. *Id.* In the morning, Claimant spends her time watching television and working on the computer and then takes a nap in the afternoon. (R. 40-41). Claimant does not sweep or vacuum, but she does wash dishes sometimes and helps cook some meals. (R. 41). Claimant is able to do laundry. *Id.* In 2011, Claimant flew to Michigan to visit her family for approximately four days. (R. 39). The flight time to Michigan was approximately three hours each way and Claimant testified that she was uncomfortable sitting during the flight because she could not move her legs. *Id.* Claimant has a driver's license and drives about once every ten days. (R. 40). Claimant's husband routinely drove her to work once she started experiencing chronic pain in her body in 2005. *Id.*

## C. Vocational Expert's Testimony at the Administrative Hearing

Feryal Jubran testified as a VE at the administrative hearing. (R. 72-80). After the VE's testimony regarding Claimant's past work experience (R. 74), the ALJ asked the VE to assume a hypothetical individual of the same age, education and prior work experience as Claimant and posed several hypothetical questions. First, the ALJ asked whether the individual could perform Claimant's past relevant work assuming the individual has the physical capacity to

> perform at the light exertional level. The individual can stand and/or walk for six hours in an eight-hour workday, sit for six hours in an eight-hour workday, lift and/or carry 10 pounds frequently, and 20 pounds occasionally. The individual can occasionally climb stairs or ramps. The individual can occasionally balance, stoop, kneel, crouch, or crawl. The individual should avoid concentrated exposure to

8

moving or dangerous machinery and unprotected heights.

(R. 74-75). The VE responded that the hypothetical individual could perform both of Claimant's past jobs as normally performed. (R. 75). The ALJ next asked the VE to assume the same hypothetical with the additional limitation of occasional overhead reaching with the bilateral upper extremities and the VE responded that the hypothetical individual could still perform both jobs. *Id.* In his third hypothetical, the ALJ asked the VE to assume that the individual requires the use of a handheld assistive device for standing at all times and should use the contra-lateral upper extremity to lift and carry up to the exertional limits. *Id.* The VE responded that the individual could only perform the past work of management analyst. *Id.* In his fourth hypothetical, the ALJ asked the VE to assume the same limitations as the third hypothetical with the addition of being limited to simple, routine, repetitive tasks. (R. 76). The VE responded that the individual could not perform any past relevant work, but could perform other jobs at the sedentary level such as machine tender (DOT # 574.685-010), assembler (DOT # 713.687-018), and inspector (DOT # 726.684-050). *Id.* Finally, the ALJ asked the VE to consider all the limitations in hypothetical number four, but with only frequent bilateral handling and fingering. (R. 76-77). The VE responded that his answer remains the same as with the prior hypothetical. (R. 77).

Claimant's attorney next questioned the VE. First, Claimant's attorney asked whether Claimant's past work in the military was classified as light work to which the VE responded in the affirmative. (R. 77-78). Next, Claimant's attorney asked the VE to assume the ALJ's fourth hypothetical with the additional limitations of no overhead reaching, use of a handheld device in the dominant hand, and occasional fingering and handling with the non-dominant hand and inquired whether his previous answer would change. (R. 78). The VE responded that he could not list any

9

available jobs with only occasional use of the non-dominant hand. *Id.* Next, Claimant's attorney asked the VE whether the individual could maintain gainful activity with the additional requirement of unscheduled breaks lasting from 44 minutes to one hour to which the VE responded in the negative. (R. 79). Further, the VE was asked whether absences from work two to three times per month would be acceptable for unskilled work to which the VE responded in the negative. *Id.* Finally, Claimant's attorney asked the VE to once again consider the ALJ's fourth hypothetical with the additional limitation that the individual must change positions every 20 to 30 minutes from sitting to standing and asked whether this limitation changes the jobs the VE previously listed. *Id.* The VE responded that the previous jobs listed would remain available. (R. 80).

## V. DISCUSSION

**The ALJ erred in evaluating the medical opinion evidence.**

Claimant contends the ALJ erred in evaluating the treating source opinions from Dr. Eaton and Dr. Richman regarding Claimant's ability to work. Pl.'s Mem. at 10-12. Specifically, Claimant argues that the ALJ failed to consider the factors in 20 C.F.R. § 404.1527(c) when weighing the opinions and erroneously disregarded the opinions on the premise that Claimant was continuing to work at the time of the opinions. *Id.* at 11. Defendant argues that the ALJ properly considered the opinions and the weight assignment is supported by substantial evidence. Def.'s Mem. [DE-24] at 12. This court agrees that the ALJ failed to properly assess the treating opinions of Drs. Eaton and Richman.

Regardless of the source, the ALJ must evaluate every medical opinion received. 20 C.F.R. § 404.1527(c). In general, the ALJ should give more weight to the opinion of an examining medical source than to the opinion of a non-examining source. 20 C.F.R. § 404.1527(c)(1). Additionally,

10

more weight is generally given to opinions of treating sources, who usually are most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability, than non-treating sources, such as consultative examiners. 20 C.F.R. § 404.1527(c)(2). Though the opinion of a treating physician is generally entitled to "great weight," the ALJ is not required to give it "controlling weight." *Craig*, 76 F.3d at 590. In fact, "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight. *Id.* Similarly, "[t]he ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence." *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992); *see Mastro*, 270 F.3d at 178 (explaining "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence") (citation omitted). Where a physician presents relevant evidence to support his opinion, his opinion is entitled to more weight. 20 C.F.R. § 404.1527(c)(2).

If the ALJ determines that a treating physician's opinion should not be considered controlling, the ALJ must then analyze and weigh all the medical opinions of record, taking into account the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). While an ALJ is under no obligation to accept any medical opinion, *see Wireman v. Barnhart*, No. 2:05-CV-46, 2006 WL 2565245, at *8 (W.D. Va. Sept. 5, 2006), he must nevertheless explain the weight accorded such opinions. *See* SSR 96-2p, 1996 WL 374188, at *5 (July 2, 1996); SSR 96-6p, 1996 WL 374180, at *1 (July 2, 1996). An ALJ may not reject medical evidence for the

11

wrong reason or no reason. *Wireman*, 2006 WL 2565245, at *8.

As for the opinion evidence at issue here, Drs. Eaton and Richman, both treating physicians, opined on various dates during the course of treating Claimant that Claimant is unable to work. In January 2008, Dr. Eaton noted that Claimant is "[s]everely disabled with multiple pain issues" (R. 505), and later noted in June 2009 that Claimant is "neurologically intact with very limited mobility, guarding, pain with movement" and is "permanently disabled." (R. 572). Similarly, Dr. Eaton noted in July 2009 that Claimant is deserving of disability. (R. 576). In October 2008, Dr. Richman, a treating neurologist, stated in a letter concerning Claimant's medical condition that Claimant is unable to perform the essential elements of her job and that he does "not anticipate any reasonable hope of recovery in the foreseeable future." (R. 950). All of these opinions pre-date Claimant's alleged onset date of July 12, 2009, and the ALJ discounted these opinions because Claimant was still employed as a management analyst and working at the time of these opinions. (R. 21). The ALJ relied exclusively on non-medical evidence in rejecting the opinions of Drs. Eaton and Richman and failed to consider the factors outlined in 20 C.F.R. § 404.1527 for determining the weight of medical opinions.

Having reviewed the record in this case, the ALJ's reliance on Claimant's employment as the sole basis for rejecting these opinions is not persuasive contradictory evidence sufficient to discount these treating opinions. Indeed, while Claimant's earnings record shows that Claimant engaged in work activity and earned $74,141.25 in year 2008 and $42,928.16 for the portion of year 2009 that Claimant was employed (R. 152), the record as a whole does not offer substantial support for the ALJ's rejection of the treating physician opinions on this basis alone. *See O'Sneal v. Astrue*, No. 3:08-CV-63, 2009 WL 702865, at *8 (M.D. Fla. Mar. 17, 2009) (finding that a claimant's

attempt to work during the alleged period of disability is not a sufficient reason alone to discredit limitations reported by her treating physician). Here, the ALJ overlooked the haphazard and inconsistent nature of Claimant's employment during the time of these opinions, relying exclusively on the technical fact of employment without evaluating the circumstances attendant to that employment which significantly undercut the legitimacy of the ALJ's singular reason for discounting such opinions. *Cf. Leidler v. Sullivan*, 885 F.2d 291, 292 n.3 (5th Cir. 1989) (noting that occasional symptom-free periods and the sporadic ability to work are not inconsistent with disability); *Gagnier v. Astrue*, No. 7:11-CV-185-D, 2012 WL 4592529, at *4 (E.D.N.C. July 27, 2012) (holding in the context of determining whether a claimant has engaged in SGA that the ALJ must consider factors set forth in 20 C.F.R. § 404.1573 which provide for consideration of the nature of the work, how well claimant performs, any special conditions, whether self-employed, and time spent at work), *adopted by* 2012 WL 4580133 (E.D.N.C. Oct. 2, 2012). For example, the record as a whole shows that Claimant had long periods of absence from work, was frequently leaving work early in the workday, was taking long breaks while at work, had job tasks being performed by other employees, and was using large sums of leave time donated from other employees. (R. 161-163) (form statement by employer stating Claimant's attendance became unacceptable in January 2007, Claimant used a total of 1,179 leave hours, Claimant's work was frequently reassigned to other employees, Claimant was frequently sick during the workday and left early, and was absent due to numerous appointments and procedures); (R. 486) (June 2007 note stating Claimant not working past few months); (R. 521) (March 2008 note stating Claimant working light duty); (R. 565, 569, 573, 576) (2009 notes stating Claimant on partial work status); (R. 947) (November 2008 note stating that Claimant is not working); (R. 964) (August 2007 note stating that Claimant is not currently

13

working). All of these facts demonstrate that Claimant's employment is not necessarily inconsistent with the opinions provided by the treating physicians regarding Claimant's disability. Claimant's attempts at continuing to work during the time period of the instant opinions were severely impeded by her impairments and the ALJ's reliance on her continued employment is not sufficient evidence.

Based on the foregoing, the ALJ's reasoning, without more, is not a legitimate basis for discounting the treating physician opinions. The court does not foreclose the possibility that a claimant's work activity may sometimes be a factor in the weight given to a medical opinion; however, the fact that a claimant is employed does not allow the ALJ to automatically reject the opinion for that reason alone. As a general matter, the ALJ failed to adequately consider the factors for determining the weight of medical opinions as the regulations require. *See* 20 C.F.R. § 404.1527(c). She failed to note the specialties of each of the physicians, the length, nature and extent of any treatment, the supportability of the opinions, and whether the opinions supported the findings of the other. *Id.* Notably, both of these physicians treated Claimant continuously for a period of at least two years before the date of their respective opinions. (R. 444) (evidencing that Dr. Eaton began treating Claimant in June 2006 for chronic pain issues); (R. 949, 990-91) (evidencing that Dr. Richman began treating Claimant in May 2006 for headache and joint pain issues). Accordingly, the ALJ failed to properly weigh the medical opinions in this case, specifically that of Dr. Eaton and Dr. Richman, and therefore the case should be remanded. On remand, the ALJ should reconsider the opinions of Drs. Eaton and Richman, and if the ALJ finds the opinions should be discounted, she should clearly articulate her reasons based on the relevant regulatory factors.

Further, where an ALJ improperly fails to weigh such medical opinions and where those opinions are "integral in determining Claimant's RFC and credibility, the ALJ should reevaluate both

14

the RFC and credibility determinations on remand." *Prather v. Colvin*, No. 5:12-CV-171-FL, 2013 WL 4806958 (E.D.N.C. Sept. 9, 2013) (citing SSR 96-7p, 1996 WL 374186, at *1 (July 2, 1996); SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996)). Therefore, it is also recommended that the ALJ reconsider the credibility determination on remand.

## VI. CONCLUSION

For the reasons stated above, this court RECOMMENDS Claimant's Motion for Judgment on the Pleadings [DE-21] be GRANTED, Defendant's Motion for Judgment on the Pleadings [DE-23] be DENIED and the case be REMANDED to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

The Clerk shall send copies of this Memorandum and Recommendation to counsel for the respective parties, who have fourteen (14) days upon receipt to file written objections. Failure to file timely written objections shall bar an aggrieved party from receiving a de novo review by the District Court on an issue covered in the Memorandum and Recommendation and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Court.

So submitted, this the 13 day of June 2014.

Robert B. Jones, Jr.
United States Magistrate Judge